Per Curiam : This case was referred to Trial Commissioner Lloyd Fletcher with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 134(h). The commissioner has done so in an opinion and report filed on March 26, 1970. Exceptions to the commissioner’s opinion, findings and recommended conclusion of law were filed by plaintiff and the case has been submitted to the court on oral argument of counsel and the briefs of the parties. Since the court agrees with the .commissioner’s opinion, findings and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same, as the basis for its judgment in this case.* Therefore, plaintiff is not entitled to recover and his petition, as amended, is dismissed.
OPINIÓN OF COMMISSIONER
Fletcher, Commissioner:
On April 15,.1958, plaintiff was separated from the Virginia National Guard upon a determination by the Secretary of the Army tha¡t he was unfit to perform the duties of his office because of physical disability resulting from a service-incurred injury. Prior to his separation, a Physical Evaluation Board (PEB) had found plaintiff unfit for further military service by reason of arthritis due to direct trauma, right ankle, when plaintiff in line of duty sustained a fracture of the medial malleolus (the inner side of the ankle joint). The PEB found plaintiff to be 20 percent permanently disabled as a result of his disability. The Physical Review Council (PRC) approved the findings of the PEB, and plaintiff was separated by the Secretary of the Army with disability severance pay. Plaintiff now seeks judgment for physical disability retired pay equal to 40 percent of the basic pay.of acolonel' from the díate of his separation on April 15, 1958, less the amount *471 paid to him as severance pay pursuant to 10 U.S.C. § 1206.[1] The basis of plaintiff’s claim is that the action of the Secretary was arbitrary, capricious, unsupported by substantial evidence, and contrary to the applicable law and regulations. According to plaintiff, the vice of the Secretary’s action consisted of the failure of the PEB and the PRC to acknowledge medical evidence of record prior to plaintiff’? separation establishing ratable disabilities of his right lower leg which, combined with the rating of the disability, acknowledged by the Secretary, entitled him to disability retirement pay instead of severance pay.
Plaintiff relies on 10 U.S.C. § 1204 (1964), 70A Stat.. 93, which provides as follows:
§ 1204. Members on active duty for 30 days or less; disability from injury: retirement.
Upon a determination by the Secretary concerned that a member of the armed forces not covered by section 1201, 1202, or 1203 of this title is unfit to perform the duties of his office, grade, rank, or rating because of physical disability resulting from an injury, the Secretary may retire the member with retired pay computed under section 1401 of this title, if the Secretary also determines that—
(1) based upon accepted medical principles, the disability is of a permanent nature;
(2) the disability is the proximate result of performing active duty or .inactive-duty training;
(3) the disability is not the result oí the member’s intentional misconduct or willful neglect, and was not incurred during a period of unauthorized absence; and
(4) either—
*472 (A) the member has at least 20 years of service computed under section 1208 of this title; or
(B) the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Veterans’ Administration at the time of the determination. * * *
On April 30,1964, plaintiff filed an application for correction of his military records with the Army Board for Correction of Military Records requesting that his records be corrected to show his retirement by reason of physical disability. The application was denied, and now plaintiff also claims that such denial constituted arbitrary and capricious action by the Secretary (acting through the Correction Board) because he was denied a hearing and because the Correction Board relied on “ambiguous” ex parte advisory opinions submitted to the Board by the Office of the Surgeon General.
Plaintiff, moreover, claims that the Board’s denial of his application was based, at least in part, upon Veterans Administration (VA) records which he contends did not properly assess the severity of his disability. After being separated, he had filed an application with the VA for disability compensation. The VA conducted an evaluation to determine the extent of plaintiff’s disability and in December 1958 awarded him a 10 percent disability rating for traumatic arthritis of the right ankle, a rating which, on reexamination in Janu-. ary 1964, was reaffirmed.
It is unnecessary, however, to pass upon the issue plaintiff raises with regard to the denial of his application for cor-r rection of military records, since appearances before the PEB or the Correction Board are alternative or cumulative avenues either, or both, of which a claimant may follow to obtain a judicial determination as to whether designated action by the Secretary was arbitrary, capricious, inconsistent with; applicable statutes or regulations, or unsupported by substantial evidence. See, Brown v. United States, 184 Ct. Cl. 501, 508, 396 F. 2d 989, 994 (1968).[2]
*473 The disabilities claimed by plaintiff stem from an accident in which he was involved while on active duty with the Virginia National Guard. On August 12, 1956, while plaintiff was assisting two accident victims, their car was struck by a truck causing the car to overturn. Both of plaintiff’s legs were pinned beneath the car. As a result, plaintiff sustained a simple fracture of the medial malleolus of the right ankle. He was taken to the United States Naval Hospital at Quantico, Virginia, where he underwent surgery for an open reduction and internal fixation with a single screw of the right medial malleolus. On October 2, 1956, he was transferred to the Station Hospital at Fort Lee, Virginia, so as to enable him to receive further treatment at a medical facility closer to his home. He was subsequently transferred to Walter Reed Army Hospital when delay in healing "became evident.
Plaintiff was hospitalized at Walter Reed from October 10, 1956, to March 1, 1957. A clinical narrative summary prepared shortly before plaintiff’s discharge from Walter Reed shows that plaintiff was placed in a short leg walking cast for about two and one-half months and that he was subsequently referred to the Physical Medicine Section for range of motion and muscle strengthening exercises of the lower right ankle. He was diagnosed as having incurred a simple fracture of the medial malleolus of the right ankle, and his condition upon discharge was described as improved. The prognosis noted that plaintiff would tun a definite risk of further difficulty with the ankle in the form of traumatic arthritis and recommended removal of the screw inserted at the Naval Hospital, but not earlier than one year from the date of its insertion.
On August 13, 1957, the Walter Reed Army Medical Center advised plaintiff’s commanding officer that plaintiff had a broken right ankle and was not to engage in any running, jumping, long standing, or long marching. His condition was described as temporary, and the Center advised that plaintiff was to report to a medical facility for reevaluation in February 1958.
In November 1957 plaintiff was readmitted to Walter Reed for the removal of the screw. It was removed on November 6, *474 1957, and a probable diagnosis of traumatic arthritis of the right tibiotalar joint was made. While at Walter Reed, plaintiff expressed the desire to appear before a medical board, and on December 16, 1957, a medical board convened and made the following diagnosis:
7240 Arthritis, due to direct trauma, right ankle, incurred 12 Aug 56 when officer sustained a fracture of -medial malleolus while on active duty with Ya Natl Guard. LOD: Yes, per telecon with Major Buckles, Surg Off, NG Bureau, Wash D.C., 8 Oct 56 (VA Code 5010; arthritis, right ankle, due to direct trauma, mild, manifested by limitation of plantar and dorsiflexion, subjective tenderness and swelling on moderate ambulation and with minimal changes demonstrable radiologically ),
The medical board found plaintiff to be permanently disabled and recommended, that he be separated from military service for disability. The medical board’s findings were approved by the Executive Officer of Walter "Reed Army Hospital on December 17,1957, and on the following day, at an informal hearing, a PEB found plaintiff to be 10 percent disabled, and recommended that he be separated with severance pay. Plaintiff did not concur with the recommendation of the PEB and demanded a formal hearing, which was held on December 23,1957, at which plaintiff appeared with appointed military counsel.
The PEB received in evidence the following reports which plaintiff claims established an additional ratable disability of his right lower leg due to impairment or weakening of the calf and leg muscles:
(1) A report by Dr. William Minor Deyerle, a private physician, who had examined plaintiff on September 9,1957.[3] Dr. Deyerle reported that X-rays of the injured ankle revealed a well-healed fracture of the medial malleolus. However, he noted that the fracture was very slow in healing, that it required prolonged immobilization, and that as a result of both the fracture and the prolonged immobilization, plaintiff had symptoms of traumatic arthritis secondary to *475 the fracture. Moreover, Dr. Deyerle noted that plaintiff had pain and limitation of motion in the ankle which caused him to walk with a definite limp. While he expected some improvement of these conditions, he described both the limitation of motion and the limp as permanent conditions. He also found an inch and a half atrophy of the right calf muscles and estimated a one-third loss of the use of the right ankle and foot.
(2) A supplemental report by Dr. Deyerle who had reexamined plaintiff on December 19, 1957.[4] Dr. Deyerle reported that, although the ankle wound had healed, plaintiff still had limitation of motion, pain on extremes of motion, and a definite limp. He also found that plaintiff had lost the power of pushoff from the front part of his-foot which prevented a normal gait and caused fatigue. He described plaintiff’s condition as permanent and stated that it would probably worsen with the passage of time.
(3) A report by Dr. Frederick E. Vultee dated December 19,1957.[5] Dr. Vultee reported that plaintiff’s complaints, both before and after the removal of the screw, were those of progressive, painful inability to move the right ankle normally, together with weakness of the muscles of the right lower leg and foot, and that none of these complaints had been present prior to the date that the fracture of the ankle had been incurred. Range of motion measurements of the ankle revealed more than a 50 percent loss of active plantar flexion, a 75 percent loss of dorsiflexion, a 75 percent loss of inversion, and a 100 percent loss of eversion. Dr. Vultee also noted moderately severe atrophy of the musculature of the right lower leg, and maximum muscle testing of the muscles of the lower leg revealed both the gastrocnemius and anterior tibial muscles to be approximately 50 percent of the expected strength. Dr. Vultee, however, stated that the diagnostic impression remained unchanged, being “Arthritis, traumatic right ankle secondary to fractured dislocation.” In his opinion, the resulting disability remained at a minimum of 30 percent.
*476 In addition to submitting the reports of Dr. Deyerle and Dr. Vultee, plaintiff testified on his own behalf at the PEB hearing. He stated that he suffered from limitation of motion and weakness in the lower extremity resulting in pain which radiated to below his knee. Also, there had been a reduction in size and strength of the leg muscles, and he has experienced fatigue and loss of normal use of his leg. The medical member of the PEB acknowledged that there was evidence of slight atrophy of the right leg in comparison to the left.
The PEB found plaintiff unfit for further military service by reason of arthritis due to direct trauma, right ankle, when plaintiff sustained a fracture of the medial malleolus. The degree of severity was reported as limited motion marked, dorsiflexion 9,0 degrees, plantar flexion 135 degrees, and the permanent disability was rated at 20 percent under the Veterans Administration Diagnostic Code (VADC) 5010 — 5271, which relate to limitation of motion of the ankle joint, marked, due to arthritis resulting from direct trauma. The PEB recommended separation with severance pay.
Plaintiff did not concur with the findings of the PEB and filed a rebuttal thereto for the purpose of requesting the PRC to take into account, not only the limitation of motion of the ankle, but also the loss of size and strength of his lower leg which he claimed adversely affected his whole body.
On April 1, 1958, the Adjutant General’s Office, Department of the Army, advised the Adjutant General, State of' Virginia, that the proceedings of the PEB and the plaintiff’s rebuttal thereto had been reviewed by the PRC, which had approved the recommended findings of the PEB. There is no record of the proceedings of the PRC or of its composition and qualifications of its members. On April 15,1958, plaintiff was separated' from the Virginia National Guard due to physical disability with severance pay of $14,976 based upon a 20 percent disability rating.
Plaintiff says that the above-described administrative proceedings were arbitrary, capricious, and unlawful in that he was finally rated at only 20 percent disabled for traumatic arthritis with a marked limitation of motion under VADC 5010 and 5271. While he accepts that rating insofar as his injured ankle is concerned, plaintiff contends that,, under *477 other provisions of the VA Schedule for Rating Disabilities (hereinafter “Schedule”), he is entitled to an additional 20 percent rating for “moderately severe” damage to the muscles of his lower right leg and calf as provided for in VADC 5311 and 5312. If he is right in this contention, obviously his total disability amounts to 40 percent, and under the provisions of 10 U.S.C. § 1204, supra, he should have been retired for disability rather than discharged with severance pay under 10 U.S.C. § 1206, supra. However, despite the appealing nature of his case factually, I do not think his contention can be sustained as a matter of law.
At the outset, it should be noted that all of plaintiff’s doctors were of the opinion that plaintiff was at least 30 percent disabled as a result of the injury to his ankle in August 1956. All his doctors had personally examined plaintiff at various times and had furnished detailed reports of their findings to the Government.[6] One of them, an orthopedic surgeon with outstanding qualifications, testified at the trial in this court.
From this evidence, it is clear that, as a matter of foot, plaintiff was, and is, at least 30 percent disabled, and the nature of his disability is such that further deterioration in the future reasonably may be expected. See finding 15. However, the grave difficulty in plaintiff’s case is that, as a maMer of law, the inquiry cannot end there.
None of plaintiff’s experts related their findings of 30 percent (or more) disability to the VA Schedule. Yet, the applicable statute requires by specific reference, that the rating of disability be made “under the standard schedule of rating disabilities in use by the Veterans Administration * * *." 10 U.S.C. § 1204(4) (B). See, Hordechuck v. United States, 144 Ct. Cl. 492 (1959).
Plaintiff in no way questions the principle that application of the VA Schedule in rating a disability is mandatory. Nor does he find fault with his 20 percent rating for traumatic arthritis with marked limitation of motion under VADC 5010-5271. He says only that he is entitled to an additional *478 20 percent rating under YADC 5311-5312 dealing with muscle injuries to the foot and leg. However, it is clear from both the Schedule instructions and the expert testimony that the diagnostic codes dealing with muscle injuries apply only where there has been a direct trauma to the muscles themselves as, for example, by a bullet wound.
This is not such a case. Plaintiff suffered no direct injury to his leg muscles. His admitted musculature difficulty in his lower right leg stems from muscle atrophy attributable to disuse. Muscle atrophy, in varying degrees, is a condition normally to be expected in cases of arthritis due to direct trauma, and the Schedule takes it into account in the ratings for limitation of motion as shown by paragraph 6 under The Musculoskeletal System, reading in pertinent part:
6. The, Joints, — As regards the joints the factors of disability reside in reductions of their normal excursion of movements in different planes. Inquiry will be directed to these considerations :
(1) Less movement than normal (due to ankylosis, limitation or blocking, adhesions, tendon tie-up, contracted scars, etc.)
*****
. (3) Weakened movement (due to muscle injury, •disease or injury of peripheral nerves, divided or lengthened tendons, etc.)
(4) Excess fatigability.
(5) Incoordination, impaired ability to execute skilled movements smoothly.
(6) Pain on movement, swelling, deformity or atrophy, of disuse. Instability of station, disturbance of locomotion,, interference with sitting, standing and weigh-bearing [sic] are related considerations. For the purpose, of rating disability from arthritis the * * * anide [is] considered [a] major joint.
*****
Hence, to accept plaintiff’s argument would be to evaluate the same disability under various diagnoses. Such method of evaluation is known as “pyramiding,” and the Schedule prohibits its use under paragraph 14 of the General Policy in Bating reading:
14. Avoidance of Pyra/miding. — The evaluation of-the same disability under various diagnoses is to be avoided. *479 Disability from injuries tofhe muscles, nerves, and joints of an extremity may overlap to a great extent, so that special rules are included in the appropriate section for their evaluation. Dyspnea, tachycardia, nervousness, fatigability, etc., may result from many causes, some may be service connected, others, not. Both the use of manifestations not resulting from service-connected disease or injury in establishing the service-connected evaluation, and the evaluation of the same manifestation under different diagnoses are to be avoided.
Only if plaintiff had suffered some direct injury to the calf or other muscles of his leg would he be entitled to ah additional rating separate and distinct from his limitation of motion rating. See, for example, Harold J. Wolf v. United States, 168 Ct. Cl. 24 (1964), where the court held that a combination of ratings for separate resections to both the large and the small intestine did not constitute improper pyramiding because of the different functions and manifestations involved in each disability. Here, in contrast, plaintiff’s manifestations are all attributable to a single disability for which he has been awarded the highest percentage allowed by the applicable diagnostic codes.
Under the YA Schedule, plaintiff is entitled to no more, and his petition, as amended, must be dismissed.

The concurring opinion of Collins, Judge, In which Dürfee, Judge, joins follows the opinion of the Trial Commissioner which has been adopted by the court.

 10 U.S.C. § 1206 (1964), 70A Stat. 94, provides in pertinent part:
§ 1206. Members on active duty for 30 days or less ; disability from injury : separation.
Upon a-determination by tbe Secretary concerned that a member of the armed forces not covered by section • 1201, 1202, or 1203 of this title is unfit to perform the duties of his office, grade, rank, or rating because of physical disability resulting from an injury, the member may be separated from his armed force, with severance pay computed under section 1212 of this title, if the Secretary also determines that—
(1) the member has less than 20 years of service computed under section 1208 of this title;
(2) the disability is not the result of the member’s intentional misconduct or willful neglect, and was not incurred during a period of unauthorized absence;
(3) based on accepted medical principles, the disability is or may be of a permanent nature.; and
(4) the disability is less than 30 percent under the standard schedule of rating disabilities in use by the Veterans’ Administration at the time of the determination,, and was" the proximate result of performing activé duty or inactive-duty training. * * *

 Also, among the Issues unnecessary to pass upon is plaintiff's challenge to the accuracy of the Veterans Administration’s evaluation of his disability. Hence, no consideration will be given to the customary rule that the Veterans Administration’s determination of degree of disability Is entitled to considerable weight. See, Hutter v. United States, 170 Ct. Cl. 517, 523, 345 F. 2d 828, 831 (1965).

 See finding 10.

 See finding 10.

 See finding 10.

 By way of contrast, neither of defendant’s expert witnesses had ever personally examined plaintiff and based their opinions solely on their examination of his records.