**Frederick S. McHENRY,**
**Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 03–5040.

United States Court of Appeals,
Federal Circuit.

May 13, 2004.

Eugene R. Fidell, Feldesman Tucker Leifer Fidell LLP, of Washington, DC argued for plaintiff-appellant.

Michael D. Austin, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; and Bryant G. Snee, Assistant Director.

Ronald S. Flagg, Sidley Austin Brown & Wood, LLP, of Washington, DC, for amicus curiae, the National Veterans Legal Services Program. With him on the brief was Barton F. Stichman National Veterans Legal Services Program, of Washington, DC.

Before LOURIE, BRYSON, and DYK, Circuit Judges.

DYK, Circuit Judge.

Appellant, Major Frederick S. McHenry ("McHenry"), appeals the decision of the Court of Federal Claims granting the government's motion for judgment upon the administrative record and upholding the 30% disability rating assigned to McHenry by the Navy's Physical Evaluation Board ("PEB"), based upon his level of impairment as a result of HIV infection, which is a precursor to AIDS. We affirm the decision of the Court of Federal Claims.

## BACKGROUND

### I

Congress has provided that, upon the pertinent Secretary's determination that a service member is "unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay," the service member may retire for disability only "if the Secretary also makes the determinations with respect to the member and that disability specified in subsection

(b) [of 10 U.S.C. § 1201]." 10 U.S.C. § 1201(a) (2000). Subsection (b) provides:

(b) Required determinations of disability.—*Determinations referred to in subsection (a) are determinations by the Secretary that—*

(1) based upon accepted medical principles, the disability is of a permanent nature and stable;

(2) the disability is not the result of the member's intentional misconduct or willful neglect, and was not incurred during a period of unauthorized absence; and

(3) either—

(A) the member has at least 20 years of service computed under section 1208 of this title; or

(B) *the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Department of Veterans Affairs at the time of the determination;* and either—

(i) the member has at least eight years of service computed under section 1208 of this title;

(ii) the disability is the proximate result of performing active duty;

(iii) the disability was incurred in line of duty in time of war or national emergency; or

(iv) the disability was incurred in line of duty after September 14, 1978.

*Id.* § 1201(b) (emphases added).

In order to determine the existence and extent of disability, the Secretary established a PEB in 1990 "to act on behalf of the Secretary of the Navy (SECNAV) in making determinations of fitness for duty, entitlement to benefits, and disposition of service members referred to the Board." *See* Secretary of the Navy Instruction 1850.4C ("Secretary's Instruction") ¶ 6a (1990).[1] Enclosure (5) of the Secretary's Instruction set forth various procedures and standards that the PEB was required to follow.

The Instruction, however, was somewhat confusing. On the one hand, it recognized that, pursuant to 38 U.S.C. § 1155, the Department of Veterans Affairs ("VA") has adopted the Veterans' Administration Schedule for Rating Disabilities ("VASRD"), *see generally* 38 C.F.R. pt. 4 (2003), which are regulations that set forth ratings for various medical conditions, including HIV-related illness,[2] but it stated that the VASRD was merely a "guide."

---

1. This version of the Secretary's Instruction has since been superseded. The current version is Secretary of the Navy's Instruction 1850.4E (2002).

2. The VASRD provides, in pertinent part:

| | Rating |
|---|---|
| AIDS with recurrent opportunistic infections or with secondary diseases afflicting multiple body systems; HIV-related illness with debility and progressive weight loss, without remission, or few or brief remissions | 100 |
| Refractory constitutional symptoms, diarrhea, and pathological weight loss, or; minimum rating following development of AIDS-related opportunistic infection or neoplasm | 60 |
| Recurrent constitutional symptoms, intermittent diarrhea, and on approved medication(s), or; minimum rating with T4 cell count less than 200, or Hairy Cell Leukoplakia, or Oral Candidiasis | 30 |
| Following development of definite medical symptoms, T4 cell of 200 or 10 more and less than 500, and on approved medication(s), or; with evidence of depression or memory loss with employment limitations | 10 |

Secretary's Instruction, Encl. (2) ¶ 2100c. The Instruction also provided a different set of guidelines for certain circumstances, because of the Secretary's concern that the VASRD guidelines were unclear or could result in pyramiding.[3] Secretary's Instruction, Encl. (4) at 27. It also stated that the scale "is for descriptive purposes only and is not meant to imply a specific disability rating is warranted for that stage." *Id.* at 28. In some areas, including the present one, the VASRD ratings and the Schedule C ratings were different.

## II

In 1988, while McHenry was on active duty in the Marine Corps, he tested positive for HIV. He was found fit for duty by several Navy medical boards until November 27, 1995, when a Navy medical board diagnosed McHenry with Department of Defense Stage V HIV infection because of McHenry's multiple symptoms related to HIV infection and his resulting physical impairments. The Navy medical board recommended that a PEB evaluate

McHenry's case to determine whether McHenry was unfit for duty, and, if so, his disability rating. The PEB assigned a Record Review Panel ("RRP") to review McHenry's records. On January 30, 1996, following the guidelines set forth in Schedule C, rather than the VASRD guidelines, the RRP found McHenry unfit for duty. Because the Schedule C guidelines did not specify a separate rating for Stage V HIV infection, the RRP assigned McHenry a 100% disability rating, which was consistent with Stage VI infection.[4] *See* Secretary's Instruction, Encl. (4) at 28. The RRP sent these findings to McHenry in a letter dated February 8, 1996. McHenry responded to the RRP's findings on March 8, 1996, by initialing the following block on the PEB's form:

I **ACCEPT** the Preliminary/ ~~Reconsidered~~ Findings. I understand that it is subject to a legal review before becoming final. I waive my right to a formal hearing.

(J.A. at 100 (emphasis and strikethrough in original).) However, no Notification of Decision was issued.

Asymptomatic, following initial diagnosis of HIV infection, with or without lymphadenopathy or decreased T4 cell count . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 0

NOTE (1): The term "approved medication(s)" includes medications prescribed as part of a research protocol at an accredited medical institution.

NOTE (2): Psychiatric or central nervous system manifestations, opportunistic infections, and neoplasms may be rated separately under appropriate codes if higher overall evaluation results, but not in combination with percentages otherwise assignable above.

38 C.F.R. § 4.88b.

3. Schedule C provided:

| VA CODE | CLINICAL | DISABILITY RATING |
|---|---|---|
| 6352–6350 | Stage III, moderate impairment | 30% |
| 6352–6350 | Stage IV, moderately severe impairment | 60% |
| 6351–6350 | Stage VI, generalized multi-system disease, severe impairment | 100% |
| 6351–6802 | Stage VI, Pneumocystis carinii-predominant pulmonary impairment | 100% |
| 6351–9302 | Stage VI, severe dementia predominant | 100% |
| 6352–9400 | Depression, anxiety sufficient for unfitting finding (Stage II–III) | 30% |
| 6353 | Positive HIV Test, not unfitting (listed for completeness only) | |
| 6352–6350 | Minimum rating for HIV members found unfit | 30% |

Secretary's Instruction, Encl. (4) at 28.

4. The guidelines also provided for a 60% disability rating for Stage IV infection. Secretary's Instruction, Encl. (4) at 28.

Meanwhile, on February 7, 1996, the Director of the Naval Council of Personnel Boards ("NCPB") issued a policy letter directing the PEB "to follow the VASRD in determining the degree of disability for members found unfit for duty as a result of HIV-related illnesses," rather than the guidelines set forth in Schedule C. (J.A. at 95.) On February 10, 1996, the National Defense Authorization Act for Fiscal Year 1996, Pub.L. No. 104–106, 110 Stat. 186, was signed into law. The Act included the "Dornan Amendment," which amended 10 U.S.C. § 1177 to require discharge or retirement for HIV-positive members of the armed forces. *Id.* § 567, 110 Stat. at 328–29. In response, the Director issued a second policy letter to the PEB on February 12, 1996, which directed that all HIV cases "pending PEB action are to be held in abeyance until further guidance is provided by a higher authority. 'Pending PEB action' includes those cases in which all PEB procedures have been completed but a Notification of Decision (en bloc) has not yet been promulgated." (J.A. at 98.) [5] As noted, no Notification of Decision had been promulgated in McHenry's case at the time of the second policy letter.

The Dornan Amendment was repealed on April 26, 1996, by the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. No. 104–134, § 2707, 110 Stat. 1321, 1321–330. On May 2, 1996, the Assistant Secretary of Defense for Force Management Policy sent a memorandum to the Assistant Secretary of the Navy (Manpower and Reserve Affairs) providing that "the Department's policies affecting HIV-positive members, that were in effect prior to the enactment of Section 567, re-main unchanged." (J.A. at 103.) The Director issued a third policy letter to the PEB on May 6, 1996, providing that "[t]he Physical Evaluation Board will use the VASRD Code 6351 guidelines for assigning disability percentage ratings for HIV+ related illnesses; however, no member will be assigned any percentage rating less than 30%." (J.A. at 104.)

The PEB RRP treated McHenry's case as still pending because no decision had issued. In accordance with the VASRD, the RRP assigned McHenry a 30% disability rating on May 13, 1996. On June 7, 1996, McHenry demanded a formal hearing, and the hearing panel of the PEB assigned McHenry a 30% disability rating on August 27, 1996. On September 10, 1996, McHenry accepted these findings, stating:

I AGREE WITH AND ACCEPT THE FINDINGS OF THE REGIONAL HEARING PANEL. I AM NOT GOING TO APPEAL OR REBUT THE FINAL DECISION AND HEREBY WAIVE MY RIGHT TO THE FIFTEEN DAY APPEAL PERIOD WHICH FOLLOWS A FORMAL HEARING. I RESPECTFULLY REQUEST MY CASE BE PROCESSED WITHOUT DELAY FOR SEPARATION/RETIREMENT.

(J.A. at 115 (emphasis in original).) On September 25, 1996, the President of the PEB issued the formal Notification of Decision assigning McHenry a 30% disability rating, and McHenry was placed on the Temporary Disability Retired List on December 31, 1996.

### III

On April 10, 1997, McHenry applied to the Board for Correction of Naval Records

---

**5.** The February 12, 1996, policy letter also suspended the February 7, 1996, policy letter's requirement that the PEB follow the VASRD guidelines in determining the degree of disability for HIV-positive members.

("BCNR"), seeking the initial January 30, 1996, 100% disability rating. The BCNR denied McHenry's application on April 5, 1999. On October 5, 1999, McHenry filed an action in the Court of Federal Claims, seeking the difference between the retirement pay he would have received if he had been retired with a 100% rating (the initial rating of January 30, 1996) and the retirement pay he had received pursuant to his 30% disability rating, and correction to his records so he would receive future disability retirement pay at the 100% level. On March 3, 2000, the government moved for judgment on the administrative record. McHenry cross-moved for summary judgment.

On November 15, 2002, the Court of Federal Claims granted the government's motion for judgment on the administrative record, denied McHenry's cross-motion for summary judgment, and entered judgment in favor of the government. *McHenry v. United States*, No. 99–857 C (Fed.Cl. Nov. 15, 2002). The court held that there was a "conflict between the two rating systems," that the Director had authority to choose which rating system to apply, and that "the use of the VASRD rating system in [McHenry's] second preliminary findings letter was both proper and acceptable by law" and rejected McHenry's other arguments. *Id.*, slip op. at 16, 19–20. McHenry timely filed this appeal.

## DISCUSSION

### I

■ Before proceeding to the merits, we must decide whether we have jurisdiction, even though both parties agree that we do. We have previously established that the Court of Federal Claims and we have jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491 (2000), in cases asserting claims under section 1201. *Fisher v. United States*, 364 F.3d 1372 (Fed.Cir. 2004); *Sawyer v. United States*, 930 F.2d 1577, 1580 (Fed.Cir.1991). However, we have not decided whether jurisdiction is defeated by a service member's voluntary retirement. In another pending case, *Poole v. United States*, No. 03–5078, the government argued that the Court of Federal Claims does not have jurisdiction over claims by a service member whose separation from the military was voluntary. Although the government did not make a similar argument in this case, we ordered supplemental briefing in both this case and in *Poole*. *McHenry v. United States*, No. 03–5040 (Fed.Cir. July 3, 2003); *Poole v. United States*, No. 03–5078 (Fed.Cir. July 3, 2003). In response, both parties and *amicus curiae*, the National Veterans Legal Services Program, filed briefs in support of jurisdiction in this case. We conclude that McHenry's voluntary retirement is not a jurisdictional bar.

Some of our cases have suggested that a voluntary retirement bars certain claims, such as claims for benefits attendant to a promotion that a service member alleges should have occurred. *See, e.g., Adkins v. United States*, 68 F.3d 1317, 1321 (Fed.Cir. 1995) ("If ... Adkins's retirement was 'voluntary,' he retained no statutory entitlement to compensation, and thus no money-mandating provision would support Tucker Act jurisdiction over his claim."); *Sammt v. United States*, 780 F.2d 31, 33 (Fed.Cir.1985) ("There is no fact dispute on the question of whether Sammt chose to voluntarily retire.... That choice deprives the [Court of Federal Claims] of jurisdiction over his claims."). In *Moyer v. United States*, 190 F.3d 1314 (Fed.Cir. 1999), we addressed the line of cases represented by *Adkins* and *Sammt*. We held

that there is no jurisdictional bar if the claim for benefits would survive whether the retirement was voluntary or involuntary, stating that "the claimant can hardly be said to have waived entitlement to the provision by voluntarily retiring or resigning if it applies irrespective of the manner in which the claimant leaves the service." *Id.* at 1319. That is the situation here; even a member of the armed forces who retires voluntarily may still seek disability benefits: "The fact that [a service member] chose to separate voluntarily does not lessen the Government's obligation to pay disability retirement if [the service member] actually had an incapacitating disease at the time of separation." *Beckham v. United States,* 183 Ct.Cl. 628, 392 F.2d 619, 625 n. 9 (1968); *see also Sawyer,* 930 F.2d at 1580. We hold that McHenry's voluntary retirement did not deprive the Court of Federal Claims of jurisdiction.[6]

## II

▆ We review a decision of the Court of Federal Claims granting or denying a motion for summary judgment without deference. *Info. Tech. & Applications Corp. v. United States,* 316 F.3d 1312, 1318 (Fed.Cir.2003).

### A

In order for McHenry to have a claim, section 1201 must be substantively money-mandating. The Supreme Court has established the standard for determining whether a statute is substantively money-mandating: "[T]he asserted entitlement to money damages depends upon whether any federal statute 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (quoting *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002, 1009 (1967)). The Court has recently reiterated this standard, holding that, in determining whether a statute is substantively money-mandating, "the court must ... determine whether the relevant source of substantive law 'can fairly be interpreted as mandating compensation for damages sustained as a result of a breach of the duties [the governing law] impose[s].'" *United States v. Navajo Nation,* 537 U.S. 488, 506, 123 S.Ct. 1079, 155 L.Ed.2d 60 (2003) (quoting *United States v. Mitchell,* 463 U.S. 206, 219, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) ("*Mitchell II*")) (alterations in original); *see also United States v. White Mountain Apache Tribe,* 537 U.S. 465, 473, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003) ("It is enough ... that a statute creating a Tucker Act right be reasonably amenable to the reading that it mandates a right of recovery in damages. While the

6. McHenry's claim may also have been barred because he accepted the decision of the second PEB but, if so, the bar is not jurisdictional in nature. In *Maier v. Orr,* 754 F.2d 973 (Fed.Cir.1985), we noted that:

Maier having chosen not to challenge her discharge at the time it was issued, by formal hearing or otherwise, the district court could properly have held that she had waived any right, if one existed, to challenge that military determination in a judicial forum and could have properly dismissed Maier's petition.

*Id.* at 984. Nonetheless, we did not dismiss the case for lack of jurisdiction. Instead, we reached the merits of Maier's claim, holding that she was not entitled to the mandamus she sought. *Id.* at 983. Here, the government admits that it waived any argument that the appellant's claim was barred by acceptance of the PEB's findings. Since the issue is not jurisdictional, the government's waiver is effective. *See, e.g., Air Courier Conference of Am. v. Am. Postal Workers Union,* 498 U.S. 517, 523 n. 3, 111 S.Ct. 913, 112 L.Ed.2d 1125 (1991); *Duty Free Int'l, Inc. v. United States,* 88 F.3d 1046, 1048 (Fed.Cir.1996).

premise to a Tucker Act claim will not be 'lightly inferred,' a fair inference will do." (quoting *Mitchell II*, 463 U.S. at 218, 103 S.Ct. 2961) (citations omitted)). The Court further noted that the statute "need not ... expressly provide for money damages; the availability of such damages may be inferred." *Navajo Nation*, 537 U.S. at 506, 123 S.Ct. 1079.

We have previously held that section 1201 satisfies the fair interpretation test of *Testan* and *Navajo Nation*, concluding that section 1201 "is a source of substantive law which can fairly be interpreted as mandating compensation, which sets out a right to recover expressly or by implication." *Sawyer*, 930 F.2d at 1580 (quoting *Mitchell II*, 463 U.S. at 217 & n. 16, 103 S.Ct. 2961) (internal quotation marks and alterations omitted). Therefore, because section 1201 "can fairly be interpreted as mandating compensation," *Navajo Nation*, 537 U.S. at 506, 123 S.Ct. 1079 (quoting *Mitchell II*, 463 U.S. at 219, 103 S.Ct. 2961), it is substantively money-mandating. Indeed, the government admits that section 1201 is substantively money-mandating. (Def's Response to Court's Order at 11.)

B

We turn then to the question whether McHenry has a claim on the merits under the facts of this particular case. McHenry's claims are justiciable to the extent that "there are tests or standards by which the [Navy's] decision can be measured." *Fisher*, slip op. at 25. McHenry first argues that the Schedule C ratings were binding and that the PEB improperly departed from them in giving him a disability rating of 30%. We disagree, but, unlike the Court of Federal Claims, we do not believe that the two rating systems are in "conflict" with one another. *McHenry*, slip op. at 16.

■ The statute mandating the creation of the VASRD requires only the Secretary of Veterans Affairs to apply the guidelines, *see* 38 U.S.C. § 1155 (2000),[7] but 10 U.S.C. § 1201 requires that disability ratings by the Secretary of the pertinent military department be based on the VASRD schedule. Section 1201 provides: "Determinations [that a service member is unfit for duty because of a physical disability] are determinations by the Secretary that ... the disability is at least 30 percent *under the standard schedule of rating disabilities in use by the Department of Veterans Affairs at the time of the determination* ...." 10 U.S.C. § 1201(b) (emphasis added). Section 1204(4)(B), involving disability retirement for service members not covered by section 1201, similarly requires

7. Section 1155 provides:

The Secretary shall adopt and apply a schedule of ratings of reductions in earning capacity from specific injuries or combination of injuries. The ratings shall be based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations. The schedule shall be constructed so as to provide ten grades of disability and no more, upon which payments of compensation shall be based, namely, 10 percent, 20 percent, 30 percent, 40 percent, 50 percent, 60 percent, 70 percent, 80 percent, 90 percent, and total, 100 percent. The Secretary shall from time to time readjust this schedule of ratings in accordance with experience. However, in no event shall such a readjustment in the rating schedule cause a veteran's disability rating in effect on the effective date of the readjustment to be reduced unless an improvement in the veteran's disability is shown to have occurred. 38 U.S.C. § 1155. The term "Secretary" is defined as "the Secretary of Veterans Affairs" for the purposes of Title 38 of the United States Code. 38 U.S.C. § 101(1).

that disability ratings be based on the VASRD schedule, using the same language as section 1201. *See also* 10 U.S.C. § 1203(b)(4). In *Thompson v. United States,* 195 Ct.Cl. 468 (1971), our predecessor court held that section 1204(4)(B) requires the Secretary to apply the VASRD in rating disabilities. *Id.* at 477; *see also Hordechuck v. United States,* 144 Ct.Cl. 492, 495 (1959). The court noted that the statute "requires by specific reference, that the rating of disability be made 'under the standard schedule of rating disabilities in use by the Veterans Administration.'" *Thompson,* 195 Ct.Cl. at 477 (quoting 10 U.S.C. § 1204(4)(B)).[8] "[T]here [is] no authority for reducing percentages beyond those found in the schedule itself." *Wolf v. United States,* 168 Ct.Cl. 24, 32 (1964). Although the armed forces must use the VASRD guidelines when the service member's disabilities "come within" them, the Secretary may make *upward* departures from the VASRD guidelines in particular cases. *Id.* at 31–32; *see also Finn v. United States,* 212 Ct.Cl. 353, 356, 548 F.2d 340 (1971).[9] These same rules apply to the identically-worded section 1201 involved in this case.

McHenry argues that the Secretary provided for just such an upward departure in Schedule C. However, Schedule C itself provided substantial flexibility in the application of its own disability rating scale, stating that the scale "is for descriptive purposes only and is not meant to imply a specific disability rating is warranted for that stage." Secretary's Instruction, Encl. (4) at 28. The Secretary's Instruction also specifically granted the Director the authority to "issue internal instructions within the DES to further interpret, implement and govern the workings of the PEB." Encl. (2) ¶ 2181a. She was not limited to proposing changes pursuant to paragraph 15b(1) of the Secretary's Instruction. The Director's policy letters were such internal instructions. Thus, the Director's policy of applying the VASRD Code 6351 guidelines, 38 C.F.R. § 4.88b, with a 30% floor, instead of the Schedule C guidelines, was fully authorized by the Secretary's Instruction. We accordingly hold that the Director's policy on HIV ratings was not contrary to the Secretary's Instruction.

### C

■ This leads us then to the second principal issue—whether the preliminary PEB decision of January 30, 1996, granting the appellant a 100% disability rating became final and binding when he accepted it. The appellant argues that the findings of the PEB became final when he agreed with the RRP's finding and waived his right to a formal hearing. We disagree. The governing provision is paragraph 6h of the Secretary's Instruction, which provided:

---

8. We also note that, as of November 4, 1996, Department of Defense Directive 1332.18 provides that "[t]he assignment of disability ratings shall be based on the Veterans Administration Schedule for Rating Disabilities (VASRD)," Department of Defense Directive 1332.18 ¶ 3.8 (1996); *see also* Department of Defense Instruction 1332.39 ¶ 6.1 (1996) ("Once a Service member is determined to be physically unfit for further Military Service, VASRD percentage ratings are applied to the unfitting condition(s)."); Department of De-

fense Instruction 1332.38 (1996). However, this directive did not apply to McHenry's disability rating, which was assigned in a formal Notification of Decision on September 25, 1996, before the directive was revised.

9. In this respect, the government admits that Department of Defense Directive 1332.18 has provided for an upward departure, setting a minimum disability rating of 30% in HIV cases.

*The findings of the PEB are final upon issuance* by the President, PEB, or when the provisions of paragraph 6c(3) are met. The findings may not be changed, modified, set aside or reopened except for the correction of errors or upon submission of a [Petition for Relief].

Secretary's Instruction ¶ 6h (emphasis added).[10] The Secretary's Instruction elsewhere provided for a written decision. The Instruction stated that "[t]he President, PEB shall issue, on behalf of the [Secretary of the Navy], the final Department of the Navy determination (Findings Letter) in routine disability cases." Encl. (2) ¶ 2186a. So too, it provided that, "[u]pon completion of review by a records review panel ... [t]he President, PEB, shall issue a Findings Letter in all other cases which are not going to a hearing." Encl. (5) ¶ 5126e.

The issuance of the Findings Letter is not merely a ministerial act, as the appellant contends. After the service member agrees to accept the findings of the PEB, the recommended action of the PEB is still subject to "legal review," as the waiver form itself specifically states. (J.A. at 100 ("I ACCEPT the Preliminary/ ~~Reconsidered~~ Findings. I understand that it is subject to a legal review before becoming final." (emphasis and strikethrough in original)).) Both the PEB and the Judge Advocate General of the Navy ("JAG") perform legal review of the preliminary determination before it becomes final. *See* Secretary's Instruction, Encl. (2) ¶ 2185b(1), b(3)(d). Here, the JAG legal review of the January 30, 1996, decision was not completed before McHenry's case

was held in abeyance while the Department of Defense reconsidered its policy in response to the National Defense Authorization Act for Fiscal Year 1996, Pub.L. No. 104–106, 110 Stat. 186, which amended 10 U.S.C. § 1177 to require discharge or retirement for all HIV-positive members of the armed forces, *id.* § 567, 110 Stat. at 328–29. Because a Findings Letter had not issued, McHenry's case was still pending before the PEB when the Naval Counsel of Personnel Boards promulgated new PEB guidelines after the repeal of section 1177 by the Omnibus Consolidated Rescissions and Appropriations Act of 1996. The Director did not improperly hold McHenry's case and other cases involving HIV infections in abeyance until the questions involving the VASRD guidelines, the Schedule C guidelines, and the Dornan Amendment were resolved.

### D

■ Appellant next asserts that the Navy failed to follow its own procedures by failing to allow him to challenge the cancellation of the original 100% disability rating. The government agrees but urges that the error was harmless. We agree with the government. The Secretary's Instruction provided:

If the results of legal review result in findings more adverse to the member than originally proposed by the PEB prior to legal review, then the President, PEB shall refer the corrected findings to the member and the member shall be allowed 15 calendar days from the date of receipt within which to submit a Petition for Relief (PFR) if desired prior to issuance of the Notification of Decision Letter.

10. Paragraph 6c(3) provided that, once advised of the PEB findings, the member could "[a]gree with records-only findings of UNFIT

FOR DUTY and waive the right to a hearing." Secretary's Instruction ¶ 6c(3) (emphasis in original).

Encl. (5) ¶ 5003c. Although the appellant never received such a notice from the PEB, he was nonetheless able to contest both the new 30% rating and the PEB's failure to finalize the initial 100% rating in the formal hearing after he received the new rating from the PEB. Thus, the PEB's failure to permit the appellant to submit a PFR directly from the adverse findings was harmless.

### E

Finally, the appellant contends that he was treated differently from those who retired before the Navy's change in policy, and that the Navy's action was therefore arbitrary and capricious. This claim is without merit. One of the important functions of government agencies is to reconsider existing policies. Although the judiciary cannot limit its decisions to prospective application, *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 752, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995); *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), administrative agencies can properly act prospectively. The need to apply new policy is routinely balanced against the need for finality. In any event, it is not arbitrary to apply a new policy, as here, only to decisions that were not final as of the date of the new policy's adoption. *See, e.g., Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 327 F.3d 1339, 1345 (Fed.Cir. 2003); *Disabled Am. Veterans v. Gober*, 234 F.3d 682, 698 (Fed.Cir.2000), *cert. denied*, 532 U.S. 973, 121 S.Ct. 1605, 149 L.Ed.2d 471 (2001). Indeed, as the Supreme Court has held, "Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). Treating McHenry differently from those persons who had received final decisions was neither arbitrary nor capricious. There is no contention here "that Major McHenry's case was treated differently from others that were non-final when his was." (Pl.-Appellant's Reply Br. at 12–13.)

### CONCLUSION

For the foregoing reasons, we affirm the decision of the Court of Federal Claims.

*AFFIRMED.*

### COSTS

No costs.