Charles J. RUSSELL, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 08–349C.

United States Court of Federal Claims.

Nov. 17, 2011.

John B. Wells, Law Office of John B. Wells, Slidell, LA, for Plaintiff.

Timothy P. McIlmail, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, Kirk T. Manhardt, Assistant Director, Department of Justice, Washington D.C., and LCDR Kathleen L. Kadlec, Office of the Judge Advocate General, Washington Navy Yard, D.C., Of Counsel, for Defendant.

## OPINION AND ORDER

SMITH, Judge.

Before the Court are Cross–Motions for Judgment on the Administrative Record. After full briefing, oral argument and careful consideration the Court hereby **GRANTS IN PART AND DENIES IN PART** the Cross–Motions for Summary Judgment.

## BACKGROUND

Plaintiff Charles J. Russell first started his service career in the United States Army. His time on active duty was for approximately one month; he was discharged thereafter with an entry level separation under honorable conditions because of an eyesight problem. Plaintiff then joined the United States Marine Corps.

As a Marine, Plaintiff was stationed in Somalia. During that time, one of his duties included burying Somalis who had starved to death. While in Somalia he also came under sniper fire. During his service, he was awarded the Combat Action Ribbon and was released to the Reserves in 1996 with an honorable discharge.

Plaintiff remained in the Selected Marine Corps Reserve and was activated for Operation Iraqi Freedom in March 2003. He arrived in Iraq in May 2003 and was assigned to Al Kut, in southeastern Iraq. He was ranked as Sergeant (E–5). While in Iraq, Plaintiff was assigned as security for convoys, which involved keeping the roads clear. One day, Plaintiff found a grenade in the road. As Plaintiff was required to keep the road clear, Plaintiff picked up the flash/bang grenade and pulled the pin. Before he could throw the flash/bang grenade, it exploded in his hands resulting in injury.

Plaintiff was treated at a medical clinic at Al Kut and was MEDEVACD to Baghdad and then to Rota, Spain. At Rota, a portion

of his little finger was amputated. After leaving Spain, Plaintiff was sent to the National Naval Medical Center in Bethesda, Maryland. It was determined that his right ring knuckle and right little finger knuckle were broken. He was treated for the fracture and still has the pins in his hand. He also received treatment for burns suffered in the grenade explosion. Plaintiff was transferred to Camp Pendleton Hospital in September of 2003 for physical therapy. He was discharged shortly thereafter.

Plaintiff was also treated by the Department of Veterans Affairs ("VA") for Post Traumatic Stress Disorder ("PTSD") in 2008. For this, he has received a 60% disability rating from the VA.

### PROCEDURAL HISTORY

This suit was filed in this Court on May 14, 2008. Plaintiff asked this Court to remand the case to the Navy's Physical Evaluation Board (PEB) for determination as to whether Plaintiff was eligible for benefits. Defendant filed a Motion to Dismiss and the parties exchanged Cross–Motions for Judgment on the Administrative Record. The Court heard oral argument on the Motions and after oral argument, Defendant filed an Unopposed Motion to refer the matter to the Navy PEB, which the Court granted. The first finding by an informal board of the Navy's PEB found Plaintiff fit for duty. Thereafter, Plaintiff demanded a formal hearing before the PEB.

The PEB then conducted a formal hearing. At his formal PEB hearing, Plaintiff introduced two new exhibits and the testimony of two treating physicians. Unlike the informal PEB, the formal PEB found Plaintiff unfit for further service. However, the formal PEB still assigned a 0% disability rating for his hand and denied the disability rating for Post Traumatic Stress Disorder ("PTSD"). Plaintiff then submitted a petition for review challenging the finding of the board which

was subsequently denied by the Director of the Navy's Council of Personnel Boards.

On September 9, 2010, Plaintiff amended his complaint in this Court, asking this Court to set aside the decisions of the PEB and the PEB Director, and asking this Court for a ruling that Plaintiff be granted a 30% disability rating for his hand pursuant to 38 C.F.R. §§ 4.71 and 4.130–3. Plaintiff also requested that he be retired pursuant to 10 U.S.C. § 1201.

### FINDINGS AT THE PEB

#### A. The Informal PEB

The Informal PEB ("IPEB") reviewed Plaintiff's record and unanimously found that Plaintiff's finger injuries caused permanent damage, but that the Plaintiff was still fit for duty.[1] Supp. Admin. R. 1672 ("SAR"). In its findings the IPEB noted that Plaintiff did well with his occupational therapy, which was conducted during inpatient and outpatient treatment. SAR 1670–1671. Further, the IPEB found that at the time of discharge, the summary described Plaintiff as having "well controlled pain on oral meds" and that his condition was "good." SAR 1670. In reaching this conclusion, the IPEB concluded that while enlisted Plaintiff was able to continue his carpentry work. The IPEB relied upon the reports from the hand specialists that had previously worked with the Plaintiff. Id.

Further, the PEB relied on a pre-employment functional assessment taken by Plaintiff in 2008 that showed that Plaintiff was able to lift weights and that he cleared brush by hand, maintained his farm property, and tended to his chickens. SAR 1674. He also continued to perform carpentry and wood carving and used power tools. SAR 1674–75. The IPEB found these activities to be consistent with the functional prognosis rendered in October 2003 that returned Plaintiff to full duty status. SAR 1675.

---

1. Under SECNAVINST 1850.4E paragraph 2033 the term "Fit" means "a finding by the PEB meaning that the member is Fit to continue naval service based on evidence that establishes that the member is reasonably able to perform the duties of his office, grade, rank, or rating, to include duties during a remaining period of Reserve obligation. Within a finding of Fit to continue naval service is the understanding that the mere presence of a diagnosis is not synonymous with a disability. It must be established that the underlying diagnosis actually interferes significantly with the member's ability to carry out the duties of his office, grade, rank or rating...."

Second, with regard to Plaintiff's claim of PTSD the IPEB held that:

1) Mr. Russell reported no mental health concerns or symptoms prior to his demobilization on his Post–Deployment Health Assessment. SAR 1667. Mr. Russell was also given an individual clinical assessment that did not reveal any mental health issues. *Id.* at 1673–1675.

2) At no time during his inpatient hospital stay or during his outpatient treatment did Mr. Russell ever report any mental health issues. SAR 1668. During his inpatient stay, Mr. Russell was given daily clinical assessments which reveal the absence of any mental health concerns. *Id.* at 1673.

3) Mr. Russell's Fitness Report dated September 30, 2003, documented good performance of duties and recommendation for promotion with his peers. SAR 1674.

In light of all of the evidence presented, the IPEB concluded that as of Plaintiff's date of separation, December 2003, Plaintiff was able to carry out the duties of his office, grade, rank or rating. Further, the IPEB concluded that on his date of separation, Plaintiff did not show any symptoms of PTSD nor did he seek a Mental Health assessment prior to discharge from active service. SAR 1674.

#### B. *The Formal PEB*

During the formal PEB [2], Plaintiff introduced two new exhibits and the testimony of two treating physicians: Dr. Harold Ginsburg, his psychiatrist, and Dr. Joe Morgan, his orthopedic hand specialist. SAR 1685. The two new exhibits consisted of 42 pages of medical evidence and 72 pages of other evidence, including the witnesses' curriculum vitae and articles authored by the witnesses. *Id.* Relying on the new evidence and witnesses, Plaintiff sought a combined disability rating of 55%. SAR 1684.

After the hearing, the PEB found Plaintiff to be unfit for continued service. However, the PEB still rated Plaintiff's total disability

rating at 0%. SAR 1684. This warranted separation from the service with severance pay. Specifically, the PEB found (1) Partial Amputation of Little Finger, Right Hand, VASRD Code 5199–5156: 0% Disabling; (2) Ring Finger Mallet Deformity, Right Hand, VASRD Code 5230: 0% Disabling. *Id.*

With regard to the partial amputation, the PEB found that because the amputation was slightly beyond the Proximal Interphalangeal ("PIP") joint and lies in the mid shaft of the middle phalanx, Plaintiff warranted a 0% rating. *Id.* The PEB further noted that in order to qualify for a 10% disability rating under VASRD Code 5156, one would have had to have an amputation at the PIP joint, which the PEB did not find Plaintiff to have. *Id.*

With regard to the Ring Finder Mallet Deformity, Diagnosis 2, the PEB applied VASRD Code 5230. This section also resulted in a 0% rating. *Id.* The PEB applied this section relying on the testimony that Plaintiff was not diagnosed as having ankylosis of his entire finger. SAR 1686.

The PEB found that Plaintiff has relatively good ring finger movement except for the ankylosed and moderately flexed distal phalanx. SAR 1686. But it concluded that this injury, just as with the injury to his little finger, would have put Plaintiff at a disadvantage when performing the duties of his MOS. *Id.* Based upon this determination, the PEB found that Plaintiff was unfit to continue naval service. SAR 1684–86.

Finally, the PEB denied any rating for PTSD, finding no evidence of such in the record and as well as relying on Plaintiff's witness, Dr. Ginsburg's testimony stating that he could not state definitely whether Plaintiff was suffering from PTSD at the time Plaintiff was discharged. SAR 1686.

#### C. *Reconsideration*

In his Reconsideration, Plaintiff alleged the PEB applied the incorrect code sections

---

2. Under 10 U.S.C. § 1214, a service member is entitled to a formal hearing and may make an appearance and be represented by counsel. *See* 10 U.S.C. § 1214; SECNAVINST 1850.4E. Unlike the IPEB, the PEB can hear testimony from witnesses. SECNAVINST 1850.4E. The PEB makes its recommendation to the President of the PEB, who then issues a final decision as to the member's fitness for duty. SECNAVINST 1850.4E.

when reviewing his disability ratings for his fingers. Plaintiff further alleged that the PEB erred in awarding him a 0% disability rating for his hand and for not finding him unfit due to his PTSD. SAR 1853.

Specifically, Plaintiff asserted that the PEB erred in applying VASRD Code 5230 instead of VASRD Code 5156. If the PEB had used VASRD Code 5156, this code requires at least a 10% disability rating. *Id.* Further, with regard to his ring finger, Plaintiff claimed that the proper code to apply was VASRD Code 5223, and that the finding of ankylosis should have required a disability rating of 10%. SAR 1854–55. Lastly, Plaintiff asserted that the PEB's finding that there was no evidence of PTSD on active duty was clearly erroneous. *Id.* Plaintiff argued that the Diagnostic and Statistical Manual of Mental Disorders (DSM) version IV and IV–TR both recognize a delayed onset and that Dr. Ginsburg testified that the stressor that activated Plaintiff's PTSD was the explosion that damaged his hand. *Id.* He further testified that he supported the VA diagnosis of PTSD. AR 170–36. According to Plaintiff, his functional level was at least 30%. *Id.*

The PEB findings were upheld. The Director found that with regard to the little finger VASRD Code 5156 provides for either a 10% or a 20% rating depending on the extent of the metacarpal resection. SAR 1855. However, the Director upheld the finding that because the little finger amputation was beyond the PIP joint, neither the 10% nor the 20% rating were warranted under this code and, thus, the PEB had applied the correct code. *Id.* With regard to Plaintiff's ankylosis, the Director stated that due to the fact that the injury only involved a portion or single joint in a single finger, it did not qualify as an ankylosis of an entire finger and, therefore, the use of VASRD Code 5230 was appropriate, not VASRD 5233. *Id.* And finally, the Director upheld the PEB's findings as to Plaintiff's post-discharge PTSD. Specifically, the Director held that while Plaintiff may currently suffer from PTSD, the "fact remains that there was no evidence of significant impairment while he was on active duty that would have pre-cluded him from performing the duties of his 'office, grade, rank or rating.'" SAR 1855–56.

## STANDARD OF REVIEW

As a general rule in the disability retirement area, the Court is limited to determining whether the action of the military is arbitrary, capricious, unsupported by substantial evidence or contrary to applicable statutes and regulations. *Craft v. United States*, 544 F.2d 468, 473 (Ct.Cl.1976). In order to do so, the Court must determine whether the decision was based on the consideration of all the relevant factors and whether there was a clear error of judgment. *Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

Furthermore, the responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province, and courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence. *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983). This standard of review does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence on the record as a whole. *Id.* at 1157. If there is substantial supporting evidence, and no showing that the administrative determinations were contrary to law, regulation, or mandatory published procedure, then there is no basis for any finding that the PEB's action was arbitrary, capricious, or in bad faith. *See id.*

In the PEB context, Plaintiff must demonstrate "that the personnel involved ignored relevant and competent evidence, that they unreasonably construed the significant body of medical documents before them, or that in [some] other manner they failed to discharge their designated duties." *Stine v. United States*, 92 Fed.Cl. 776, 791 (Fed.Cl. 2010). Pursuant to RCFC 52.1, which governs all motions for judgment on the administrative record, the Court must determine "whether, given all the disputed and undis-

**14**

puted facts, a party has met its burden of proof based on the evidence in the record." *Id.*

The standard to be used in making determinations of physical disability as a basis for retirement or separation is unfitness to perform the duties of office, grade, rank or rating because of disease or injury incurred or aggravated while entitled to basic pay. SECNAVINST 1850.4E. Each case is considered by relating the nature and degree of physical disability of the member to the requirements and duties that the member may reasonably be expected to perform in his or her office, grade, rank or rating. SECNAVINST 1850.4E. A PEB determination that a member is fit to continue naval service is not equivalent to a determination that a member is fit for full duty, because the inability to perform duties in every geographic location "will not be the sole basis for a finding of Unfit." SECNAVINST 1850.4E. As such, a finding of unfitness for military duty does not necessarily equate to compensation based on the VASRD.

Sections 1201 and 1204 of Title 10 of the United States Code mandate application of the Veterans Administration Schedule for Rating Disabilities ("VASRD") by the Secretary of the Navy in determining disability ratings. *McHenry v. United States,* 367 F.3d 1370, 1378–79 (Fed.Cir.2004) (citations omitted). While the Secretary cannot reduce a VASRD disability rating, he can make upward departures from the applicable ratings. *Id.* at 1379. When the circumstances of a case are such that two percentage evaluations could be applied, the higher percentage is assigned only if the service member's disability more nearly approximates the criteria for that rating. SECNAVINST 1850.4E. Otherwise, the lower rating is assigned. SECNAVINST 1850.4E. After consideration of data, if there remains reasonable doubt as to which rating should be applied, doubt is resolved in the member's favor. SECNAVINST 1850.4E.

### DISCUSSION

Plaintiff requests that he be retired pursuant to 10 U.S.C. § 1201. Section 1201 provides that a service member is eligible for disability if the service member has at least 20 years of service, or the disability is at least 30% under the standard schedule of rating disabilities in use by the VA. § 1201(a), (b)(3). Because Plaintiff has served less than five years, he is only eligible for disability if he is found to have a disability of at least 30%. Plaintiff contends that he has a disability of 60%, while the PEB found, and Defendant agrees, that Plaintiff has a 0% disability. The Court will therefore, turn its attention to the arguments raised by each party.

### Partial Amputation of the Right Little Finger

Plaintiff asserts that the PEB's determination that the amputated right little finger is rated at 0% percent disability was arbitrary, capricious, and unsupported by substantial evidence because the PEB failed to consider all the relevant evidence as it merely "rubber stamped" the IPEB's decision. Plaintiff argues that "the finding by the PEB that the amputation was 'slightly beyond the PIP joint,' does not merit a 0% disability since it is undisputed that the amputation was in proximity to it." Thus, Plaintiff reasons that, under Code 5156, the PEB should have assigned at a minimum a 10% rating.

Contrary to these allegations, Defendant argues that the PEB appropriately, used Code 5156 and 38 C.F.R. § 4.71a, which require a rating of 0% disability if the amputation is below the PIP joint. Therefore, Defendant asserts that because Plaintiff's amputation was beyond the PIP joint, the 0% rating was appropriate and supported by the evidence.

In reviewing the record before it, the Court first turns to Code 5156. Code 5156, the only single finger amputation rating code, provides for either a 10% or a 20% rating depending on the extent of bone loss and whether it includes metacarpal resection. SAR 1855; 38 C.F.R. § 4.71a. Code 5156 is specifically for amputation at, or proximal to, the PIP joint. 38 C.F.R. § 4.71a (VASRD Code 5156). Further, 38 C.F.R. § 4.31 mandates the use of a 0% disability rating "when the requirements for a compensable evaluation are not met." *See also* SECNAVINST 1850.4E. The term "compensable" means a

disability rating of 10% or more. In this case, the PEB, based on Plaintiff's medical records, found that Plaintiff's disability rating is 0% because the amputation was beyond the PIP joint.

It is clear to the Court that there is no evidence in the record to demonstrate that the PEB ignored its own provision in reaching its decision. Further, Plaintiff has failed to demonstrate that the decision was not supported by the medical records, and was, therefore, clearly erroneous. The medical records show that the amputation was beyond the PIP joint. The PEB concluded that this did not meet the requirement for a compensable disability and, pursuant to Code 5156, rated Plaintiff with a 0% disability. The decision of the PEB was reasonable and supported by the evidence before it. Accordingly, because this Court cannot substitute its judgment for that of the PEB, and because the decision was not clearly erroneous, in regard to the partial amputation of the right little finger, the Court holds that the PEB's decision was not arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statute and regulations. For the aforementioned reasons, the Court upholds the PEB's determination of a 0% rating for the partial amputation of the right little finger.

### Ankylosis of the Right Hand

Secondly, Plaintiff contends that the PEB "disregarded the regulation" when they selected Code 5230 instead of 5223 in making its determination that Plaintiff was rated at 0% disability for ankylosis of the right hand. Plaintiff argues that that ankylosis was present in two digits, the right ring finger and the right little finger, and, therefore, under Code 5223 the minimum allowable rating should be 10%. Plaintiff further argues that the medical records implied ankylosis of the entire finger and that, since all doubts must be resolved in favor of Plaintiff, that the PEB should have found ankylosis of the entire finger. Thus, by applying the wrong code and by failing to construe the evidence in favor of Plaintiff, the PEB's decision was arbitrary, capricious, and unsupported by substantial evidence.

Conversely, Defendant argues that Plaintiff's ankylosis only involves a portion of a single finger, and as such, Plaintiff's argument lacks merit. Defendant states that Code 5223 applies to ankylosis of two fingers, while Code 5230 applies to ankylosis of the entire finger. In this case, the PEB found that Plaintiff had ankylosis of a portion of the right ring finger. Accordingly, the PEB's application of Code 5230 was appropriate, as only the right ring finger had ankylosis, and the PEB correctly rated Plaintiff with a 0% disability.

Turning to the selection of Code 5230, instead of 5223, the Court finds Plaintiff's arguments unpersuasive. Code 5223 applies to "favorable" ankylosis of two fingers (digits), while Code 5230 applies to an entire finger. In this case, the PEB based its decision on Plaintiff's medical records. In reviewing these records, the PEB determined that Plaintiff's manifesting ankylosis only involved a portion or single joint in a single finger. Therefore, the PEB reasonably concluded that the use of VASRD Code 5230 and the 0% disability rating were appropriate. 38 C.F.R. § 4.71a (VASRD Code 5230; providing for a zero disability rating for any limitation of motion in the ring or little finger).

There is no evidence to show that the PEB's decision to use Code 5230 was clearly erroneous, or that its decision was not supported by the evidence. Accordingly, the decision was not arbitrary, capricious, unsupported by substantial evidence, or contrary to the applicable statutes and regulations. For the foregoing reasons, the Court upholds the PEB decision regarding ankylosis of the right ring and little finger.

### Post–Traumatic Stress Disorder

Plaintiff contends that the PEB's finding that there was no evidence of PTSD because of a lack of reportable symptoms or diagnosis while on active duty is clearly erroneous. The authority for the diagnosis of PTSD is the Diagnostic and Statistical Manual of Mental Disorders versions IV and IV–TR. AR 1775, 1780. Both versions of the DSM–IV recognize that PTSD is a delayed onset disease. In delayed onset PTSD, at least six

months pass before the symptoms manifest. In fact, the symptoms may not be evident for years. Yet all experts agree that the symptoms must be imputed back to the traumatic event or stressor. *See* **APA, Diagnostic and Statistical Manual of Mental Disorders,** (4th ed. 2000); Harold M. Ginsburg & Kristie D. Holm, *The Struggle for DOD/VA Benefits,* 39 **Psychiatric Annals** 71, (2009).

Plaintiff states that, in making this decision, the PEB ignored the generally accepted diagnostic manual on the subject. SECNAVINST 1850.4E ¶ 8013 requires that psychiatric decision be made in consonance with DSM–IV. Plaintiff points to the fact that in the instant case neither the PEB nor the Director cited the DSM–IV series. No psychiatrist or psychologist served on this particular board. Thus, the determination was the functional equivalent of lay people disagreeing with qualified mental health professionals. Plaintiff further contends that neither the PEB nor the director gave a reasoned basis for not complying with the DSM–IV. Thus, Plaintiff reasons that this refusal to comply with accepted medical principles is arbitrary and capricious.

Moreover, Plaintiff asserts that contrary to the findings of the PEB, there is no "paucity" of evidence concerning PTSD. On June 16, 2004, the VA conducted a PTSD screening with a positive result. AR 1659–1660. The diagnosis was made on July 28, 2004, which was a mere seven months after discharge and fourteen months after the explosion in his hand. There is no evidence in the record that such a screening was conducted on Plaintiff prior to his discharge.

Plaintiff also claims that the Post Deployment Health assessment dated 9 July 2003 relied upon by the PEB, AR 1686 is not helpful, AR 1524–25, because it is not an approved PTSD screening test. According to Plaintiff, it fails to highlight potential psychiatric problems, and instead, focuses on physical problems. The few questions which explore mental health issues are inadequate to screen for all PTSD. AR1524–25. Question 5, for example, could reasonably be construed to mean physical rather than mental health. Question 4 asks only if the patient intends to seek counseling for mental health issues. The same holds true for question 10. Question 9 addresses only one of many stressors. For instance, a person can undergo a stressor without necessarily being afraid of impending death. Here, Plaintiff underwent the stressor of having a grenade detonate in his hand, but was never in fear of his life.

Notably, this assessment was completed less than two months after the stressor. With a delayed onset PTSD, serious symptoms would not have manifested themselves and even if they did, Plaintiff may still have been in denial.

Furthermore, Plaintiff alleges that the PEB ignored the other evidence of PTSD in the record. Specifically, the PEB ignored medical records from the VA that confirmed the PTSD. AR 1565, 1573–85, 1588, 1591, 1620–21, 1623–32, 1636–38, 1641–1656, 1657–1659, 1663. Additionally, medical documents provided as a supplement to the PEB from Dr. Ginsburg confirmed the VA diagnosis. AR 1703–36. Dr. Ginsburg's testimony supported his diagnosis. Although he did not see Plaintiff in December of 2003, the massive weight of the evidence supports his confirmation of the VA diagnosis.

Additionally, Plaintiff contends that the military did not consider the stressor effect of Plaintiff's graveyard duty in Somalia. AR 1647. Plaintiff relates that he came under sniper fire in Somalia and in fact he was awarded the combat Action Ribbon for his service during that operation. He also testified that he was assigned to bury Somalis who had starved to death. *Id.* The Post Deployment form referenced by the PEB only discussed events of that particular deployment and did not consider previous combat operations.

Consequently, according to Plaintiff, the findings of the PEB that the member presented no evidence of stressors were not supported by substantial evidence. The evidence of the explosion in his hands standing alone is sufficient to trigger PTSD. When coupled with his Somalia experience, there is no doubt that Plaintiff underwent significant stressors compatible with PTSD.

No other stressors have been discovered by the VA, Dr. Ginsburg, or during the hear-

ing. In fact, Plaintiff claims that he leads a quiet and sedate life. Thus, Plaintiff reasons that, absent any secondary stressor, his military service must be documented as the sole source of the existing PTSD. Dr. Ginsburg estimated that his functional level based on 38 C.F.R. § 4.130–3 was at least 30%. Consequently, according to Plaintiff, the PEB decision and the denial of the Petition for Relief by the Director were unsupported by substantial evidence.

On the other hand, Defendant argues that the PEB's decision was supported by the evidence. To qualify for a PEB disability rating, any condition for which a service member suffers must have resulted in an identifiable impairment in duty performance of sufficient magnitude to render the service member unfit for continued naval service. SECNAVINST 1850.4E. Disorders later discovered after discharge from active duty that are linked to active duty by the VA may be eligible for a disability rating by the VA. *Stine*, 92 Fed.Cl. at 795. The VA disability system and the military disability system, however, are two different systems with different mandates. *See id.* Both the VA and the Navy apply the VASRD, but they apply them for different reasons. *Id.* The VA applies the VASRD to gauge how a service connected disability impairs an individual's capacity to function and perform tasks in the civilian world, not whether the service member is fit "to perform the duties of office, grade, rank or rating while on active duty." *Id.* (citations omitted). The VA has given Plaintiff a 60% total disability rating. First Am. Compl. ¶ 14. Plaintiff introduced documentation that he received treatment from 2004 to 2008 from the VA in part for his PTSD. SAR 1560–1663.

Furthermore, Defendant asserts that the PEB correctly found that Plaintiff's PTSD did not manifest itself while he was on active duty. SAR 1686, 1823, 1856. Plaintiff provided no objective evidence that symptoms of his PTSD diagnosed post discharge were either present or, most importantly, impaired his performance while on active duty sufficiently as to render him unfit for continued naval service. The PEB's finding was supported by substantial evidence. As such, according to Defendant, Plaintiff is not entitled to any disability rating under VASRD Code 4.130–3 for his PTSD.

The Court must disagree with the Defendant. While great weight must be given to the PEB decision, the Court cannot ignore that the evidence on which the PEB's decision was based is not substantial evidence within the meaning of that concept. PTSD was in the Court's view clearly apparent or should have been before the Plaintiff's discharge. The medically accepted procedures would have shown it to be present if the PEB had used these procedures. Therefore, the Court holds the decision not to find PTSD arbitrary, capricious and not supported by substantial evidence.

### CONCLUSION

For the reasons set forth above, the Court hereby **GRANTS IN PART and DENIES IN PART** the Cross–Motions for Summary Judgment. Specifically, the Court upholds the PEB decision regarding ankylosis of the right ring and little finger. With regard to PTSD, the Court holds that the decision not to find PTSD was arbitrary, capricious and not supported by substantial evidence. In light of this holding, the Court must consider what remedies now apply. The court hereby SCHEDULES a telephone status conference call to be held on Thursday, December 15, 2011 at 3:00 pm.

**It is so ORDERED.**